UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 13-CV-6170 (JFB)(AYS)

STEPHEN POTHEN,

Plaintiff,

VERSUS

STONY BROOK UNIVERSITY,

Defendant.

**MEMORANDUM AND ORDER**
September 30, 2016

JOSEPH F. BIANCO, District Judge:

Stephen Pothen ("Pothen" or "plaintiff"), proceeding *pro se* and *in forma pauperis*, filed this action against the State University of New York at Stony Brook ("Stony Brook" or "defendant") on November 7, 2013, alleging that Stony Brook violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") by discriminating and retaliating against him based upon his race, national origin, color, and religion. The Court, in an order dated March 21, 2014 (the "March 21, 2014 Order"), dismissed plaintiff's complaint for failure to state a cause of action and gave plaintiff an opportunity to amend.[1] Plaintiff filed an amended complaint on June 26, 2014, and a second amended complaint on April 28, 2015.[2]

---

[1] The Court also dismissed plaintiff's claim that he was discriminated against based upon his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). (*See* March 21, 2014 Order, Docket No. 14.) Plaintiff's second amended complaint does not appear to raise a claim for discrimination based upon plaintiff's age. If it had, the Court would dismiss such a claim on the sovereign immunity grounds set forth in the March 21, 2014 Order. (*Id.*)

[2] Plaintiff's initial complaint and his amended complaint indicated that he was bringing claims under Title VII. (*See* Docket Nos. 1 and 19.) Although plaintiff's second amended complaint does not specifically state the statute under which he seeks relief and plaintiff alludes to requests for compensation for psychological trauma, mental pain and depression, sciatica, "physical and mental overload which turned my family life equal to hell," humiliation in the work place, "salary and leave loss," and "the salary equivalent to the number of days" of

Defendant moves to dismiss the second amended complaint pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that (1) plaintiff fails to state a Title VII discrimination claim; (2) plaintiff fails to state a claim for retaliation under Title VII; (3) plaintiff fails to state a claim for hostile work environment; and (4) plaintiff failed to properly serve the second amended complaint and did not comply with the Court's orders such that dismissal under Federal Rule of Civil Procedure 41(b) is warranted.

As discussed below, defendant's motion to dismiss is granted in part and denied in part.

I. BACKGROUND

A. Factual Background

The following facts are taken from the second amended complaint filed on April 28, 2015 ("SAC")[3] and are not findings of fact by the Court. Instead, the Court will assume the facts in the SAC to be true and, for purposes of the pending 12(b)(6) motion to dismiss, will construe them in a light most favorable to plaintiff, the non-moving party.[4]

Beginning in 2005, plaintiff worked as a maintenance engineer at Stony Brook. (SAC at 1.) Plaintiff alleges that his supervisors discriminated and retaliated against him because of his Indian national origin and his religion, and created a hostile work environment by engaging in a conspiracy to destroy his career and by failing to provide a safe working environment in violation of Stony Brook's code of conduct. (*Id.* at 1-3.) Plaintiff alleges that he was given "bad" reports, denied overtime, denied a promotion, given undesirable work assignments, denied an assistant for work assignments where one was customary, yelled at and called names by his supervisors, and terminated from his position. (*Id.* at 2-9.)

Plaintiff alleges that he and his co-worker, also of Indian descent, were given "bad reports" by a supervisor, Frank Nappie ("Nappie"), who "hated Indians." (*Id.* at 1-2.) Plaintiff claims that, under a prior supervisor, his service record was good. (*Id.* at 8.) Plaintiff states that he is Christian and has Jewish grandparents. (*Id.* at 3.) He alleges that he was denied a promotion to the position of "Engineer 2" and that management provided him with "no utility assistant (except on [S]aturdays and [S]undays during the last year of my service) as they did to other engineers," which caused plaintiff to have to do his work as an engineer and the work an assistant would do. (*Id.*) Plaintiff also alleges that Nappie was responsible for allotting overtime and requested plaintiff give him money in exchange for an allotment of overtime. (*Id.* at 3.) Plaintiff alleges that, after he refused to pay Nappie for overtime on religious grounds, Nappie withheld overtime from him, but provided overtime to plaintiff's colleagues. (*Id.*)

---

leave consumed, the Court assumes, for the purposes of this motion, that plaintiff's claims are for the violation of Title VII since that is the claim for which notice was given.

[3] Attached to plaintiff's SAC are his initial complaint, filed November 7, 2013, as well as several additional documents. The Court cites to the pagination of the SAC.

[4] Plaintiff's complaint is difficult to follow and contains lengthy explanations about the harm he allegedly suffered. The Court does not provide details of all of the alleged harm here and, instead, includes only those facts necessary for deciding the instant motion.

2

Plaintiff also alleges the following specific incidents were the result of discrimination and contributed to a hostile work environment:[5] (1) on April 20, 2013, plaintiff's supervisor David Kingsly ("Kingsly") "hammered on the table," yelled at plaintiff, and called him stupid; (2) on June 15, 2013, the assistant director questioned plaintiff about a building inspection log and yelled at plaintiff; (3) on June 12, 2013, plaintiff was asked to clean paint which caused him dizziness and other discomfort, a task he alleges other engineers were not asked to do; (4) on September 10, 2012, plaintiff had an accident, which his supervisor refused to report and which led to an altercation; (5) on June 10, 2013, Kingsly threw a soiled raincoat at plaintiff, interrogated and yelled at plaintiff, told plaintiff that he needed treatment for paranoia, asked plaintiff to do an "imposed job" of energy survey (a task plaintiff alleges he was only tasked with doing on Saturdays and Sundays), and refused to give plaintiff a log sheet used to track plaintiff's work; and (6) on May 27, 2013, Kinglsy permitted plaintiff's colleague to leave early, but denied plaintiff's request to leave the next day and threatened to take action against him. (*Id.* at 5-7.)

With respect to his claim of retaliation, plaintiff alleges that he filed numerous complaints with various departments at Stony Brook, and filed complaints with the Human Rights Commission ("HRC") and the Equal Employment Opportunity Commission ("EEOC"), including a "workplace violence complaint" on September 27, 2013. (*Id.* at 1.) Plaintiff alleges that he was retaliated against by supervisors who mistreated him, including by trying to poison him, manhandling and threatening him, giving him unfavorable work assignments without an assistant, and denying him a promotion. (*Id.* at 13.)

B. Procedural History

Plaintiff filed the initial complaint on November 7, 2013. By order dated November 20, 2013, the Court stated that it would dismiss the action without prejudice if service of the summons and complaint were not made on Stony Brook by March 7, 2014, or if plaintiff failed to show good cause as to why such service had not been effected. Plaintiff submitted an affirmation of service dated January 6, 2014 stating that he served the summons and complaint by mailing copies to the "Director" of Stony Brook, the Attorney General of the United States, and the United States Attorney for the Eastern District of New York. On February 7, 2014, Stony Brook filed its first motion to dismiss based upon failure to state a claim, which the Court granted on March 21, 2014. Plaintiff was given leave to amend, which plaintiff attempted to do by letter and which Stony Brook opposed. By Order dated May 28, 2014, the Court gave plaintiff one final opportunity to amend his complaint. Plaintiff filed an amended complaint on June 26, 2014 and, on October 20, 2014, Stony Brook made a second motion to dismiss. On March 25, 2015, the Court permitted plaintiff to file the SAC. The SAC was filed on April 28, 2015, and on May 29, 2015, the defendant filed a third motion to dismiss. By order dated August 10, 2015, the Court directed the plaintiff to serve "the defendant with a full, paper copy of the Second Amended Complaint and a copy of the disc he has filed with the Court" by August 23, 2015. By letter dated August 27, 2015, defendant advised the

---

[5] Plaintiff does not distinguish between discrimination on the basis of national origin or religion in alleging that these incidents were the result of discrimination.

The Court infers that plaintiff intends to allege that these incidents provide the basis for his claims of both religious and national origin discrimination.

3

Court that plaintiff did not comply with the portion of the Court's order requiring him to serve a complete copy of the SAC that had been filed with the Court and indicated that the SAC served contained different text than the SAC filed with the Court. On August 31, 2015, the Court ordered plaintiff to serve defendant with "actual copies" of the full documents, and warned that a failure to comply with the Order could result in dismissal of the action under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. On September 21, 2015, plaintiff filed a letter with the Court and attached a disc with documents. Defendant filed its motion to dismiss on October 16, 2015, and after plaintiff failed to file an opposition, the Court ordered the plaintiff to respond in writing as to why the action should not be dismissed for failure to prosecute. Plaintiff filed a certificate of service on April 14, 2016. Defendant submitted a letter to the Court on April 19, 2016 arguing that defendant's motion should be granted because plaintiff failed to show that he properly effected service of the SAC and failed to respond to defendant's motion to dismiss.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaints as true and draw all reasonable inferences in favor of the non-moving party. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citation omitted)).

The Court notes that, in adjudicating this motion, it is entitled to consider "any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

4

Where, as here, the plaintiff is proceeding *pro se*, "[c]ourts are obligated to construe the [plaintiff's] pleadings . . . liberally." *McClusky v. New York State Unified Court Sys.*, No. 10-CV-2144 (JFB)(ETB), 2010 WL 2558624, at *2 (E.D.N.Y. June 17, 2010) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) and *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). A *pro se* plaintiff's complaint, while liberally interpreted, still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

### III. DISCUSSION

#### A. Dismissal Under Federal Rule of Civil Procedure 41(b)

Defendant argues that plaintiff's failure to properly serve the SAC in violation of the Court's orders warrants dismissal under Rule 41(b) of the Federal Rules of Civil Procedure. Defendant asserts that plaintiff has been deficient in properly effecting service of process on defendant by initially providing defendant with a version of the SAC that did not contain exhibits or the disc provided to the Court and, following the Court's August 10, 2015 Order, providing defendant with an SAC containing content that differs from the SAC filed with the Court. Defendant argues that plaintiff still has not properly effected service in violation of the Court's August 31, 2015 Order directing plaintiff to serve the Attorney General with a full and complete copy of the actual document filed with the Court, and that violation of this Order and plaintiff's failure to properly serve defendant, warrants dismissal.

A court may, in its discretion, dismiss a case under Rule 41(b) "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order. . . ." Fed. R. Civ. P. 41(b). In analyzing whether to dismiss a plaintiff's case pursuant to Rule 41(b), a district court must consider five factors, including: "(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal." *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (internal quotation marks omitted). "Generally, no one factor is dispositive." *Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001). A *pro se* litigant's claim should be dismissed for failure to prosecute "only when the circumstances are sufficiently extreme." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (internal quotation marks omitted).

The Court cannot conclude that these factors support dismissal. Plaintiff was made aware of deficient service and directed by the Court on several occasions to serve defendant with full and complete copies of the SAC including all of the documents that had been previously filed with the Court. Although plaintiff apparently has failed to fully comply with that Order and appears to have served and filed different versions of the SAC, this non-compliance does not appear to be willful but rather appears to be due to plaintiff's *pro se* status. Moreover, defendant was served with the April 28, 2015 SAC on August 20, 2015 (attached as Exhibit C to defendants' motion) and the differences between that

5

document and other documents filed with the Court on other dates are not determinative for purposes of this motion to dismiss. Any documents or allegations not contained in the April 28, 2015 SAC are not critical to the Court's analysis and can be reconciled between the parties with the assistance of the Magistrate Judge. In short, defendant has demonstrated no prejudice, especially because it is clear that defendant was able to access and review plaintiff's SAC, and other filings, in connection with the motion to dismiss. Thus, the Court does not conclude that this is a situation warranting the harsh remedy of dismissal under Rule 41(b).

### B. Title VII Discrimination

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "To establish a prima facie case of employment discrimination under Title VII, a plaintiff must show that '(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination.'" *Chang v. N.Y.C. Dep't for the Aging*, No. 11-CV-7062 (PAC)(JLC), 2012 WL 1188427, at *4 (S.D.N.Y. Apr. 10, 2012) (quoting *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010)), *report & recommendation adopted*, 2012 WL 2156800 (S.D.N.Y. June 14, 2012).

At the pleading stage, a Title VII plaintiff need not allege specific facts establishing each element of a prima facie case of discrimination. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). "Under *Iqbal* and *Twombly* . . . in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Id.* at 86. In his complaint, "a plaintiff must allege that the employer took adverse action against [him] at least in part for a discriminatory reason, and [he] may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87. "'[A]t the initial stage of the litigation' in a Title VII case, 'the plaintiff does not need substantial evidence of discriminatory intent.'" *Johnson v. Andy Frain Servs., Inc.*, No. 15-CV-1143, 2016 WL 210098, at *1 (2d Cir. Jan. 19, 2016) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "Rather, what must be plausibly supported by the facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* (citations and internal quotation marks omitted).

Defendant argues that plaintiff's discrimination claims should be dismissed because most of the alleged actions do not constitute "adverse employment actions" under Title VII and the SAC does not include sufficient factual allegations to support a conclusion that any adverse employment action occurred under circumstances giving rise to an inference of discrimination. For the reasons set forth below, the Court grants in part and denies in part defendant's motion to dismiss plaintiff's Title VII discrimination claims. In particular, the Court agrees that plaintiff's discrimination claim based upon his termination should be dismissed because there are no facts to support a plausible claim;

6

however, the remainder of the discrimination claim survives defendant's motion to dismiss.

1. Adverse Employment Actions

Defendant concedes that some of the alleged actions referred to in the SAC may constitute adverse employment actions under Title VII, including plaintiff's termination, his failure to receive a promotion, and the denial of overtime, but argues that plaintiff's complaints regarding "bad reports," undesirable work assignments, and altercations with plaintiff's supervisors are workplace grievances that do not constitute adverse employment actions. (Def's. Mot. at 9-10.)

To constitute an adverse employment action in the context of a discrimination claim, an action must cause "a materially adverse change in the terms and conditions of employment." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 404 (S.D.N.Y. 2014) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008)). "[T]here is no exhaustive list of what constitutes an adverse employment action. Courts have held that termination, demotion, denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee, among other things, constitute adverse employment actions." *Collins v. Potter*, No. 05-CV-3474 (JFB)(LB), 2008 WL 4104459, at *4 (E.D.N.Y. Aug. 29, 2008) (quoting *Little v. NBC*, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002)). An "adverse employment action" is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted).

Plaintiff's allegations regarding "bad reports" and various altercations with supervisors could qualify as adverse employment actions depending on the circumstances. Thus, this fact-specific determination cannot be resolved on a motion to dismiss in this case. Although plaintiff does not specifically allege material negative consequences in the terms of his employment as a result of either his negative reviews or the altercations, the Court believes that, based on the totality of the allegations contained in the SAC, the absence of that particular aspect of his allegations does not warrant dismissal, particularly in light of plaintiff's *pro se* status.

Similarly, with respect to plaintiff's allegations regarding work assignments, the Court finds that plaintiff has plausibly alleged an adverse employment action. Defendant categorizes plaintiff's allegations as complaints related to unfavorable work assignments. Indeed, "where assignments fall within the duties of a plaintiff's position, receiving unfavorable schedules or work assignments does not, without more, rise to the level of an adverse employment action." *Williams v. Ford Motor Co.*, No. 12-CV-0411, 2014 WL 1572302, at *13 (W.D.N.Y. Apr. 18, 2014) (collecting cases). However, the assignment of "a disproportionately heavy workload" can constitute an adverse employment action. *Feingold v. New York*, 366 F.3d 138, 152-53 (2d Cir. 2004). Here, plaintiff's allegations that, unlike other engineers, he was at times not provided with a utility assistant, requiring him to "do the work of engineer 1 and assistant at the same time" (SAC at 3), and was asked to clean paint on June 12, 2013, even though "[o]ther engineers also dropped paint . . . but [were]

7

not asked to clean" (SAC at 6), go beyond alleging the receipt of unfavorable assignments. If true, plaintiff's allegations would show that he suffered an adverse employment action when he received assignments of a disproportionately heavy workload. *See Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 223-24 (finding plaintiff sufficiently pled the adverse employment action of assignment of a disproportionately heavy workload when he was assigned seven weeks of duty while his colleagues were given only two weeks of duty).

2. Inference of Discrimination

Defendant also argues that plaintiff's claim fails because the SAC does not include sufficient factual allegations to support the conclusion that the adverse employment actions occurred under circumstances giving rise to an inference of discrimination. The Court agrees with respect to plaintiff's discharge claim, but finds that plaintiff has stated a plausible inference of discrimination with respect to claims regarding denial of a promotion, denial of overtime, and the receipt of a disproportionately heavy workload.

In general, "[a]n inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the plaintiff's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (internal quotation marks omitted). In seeking to demonstrate that he received less favorable treatment than employees not in a protected group, a plaintiff may demonstrate he "was similarly situated in all material respects to the individuals with whom [he] seeks to compare [him]self." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229-30 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). Generally, "[w]hether two employees are similarly situated . . . presents a question of fact," rather than a legal question to be resolved on a motion to dismiss. *Id.* At the pleading stage, allegations that the plaintiff and comparators worked in the same group and were accountable to the same supervisors, but were subjected to disparate treatment may be sufficient to raise an inference of discrimination. *Id.* (concluding that plaintiff plausibly alleged he and comparator employees were similarly situated even though he did not plead facts about the comparator employees' job function, experience, qualifications, and rate of pay).

With respect to plaintiff's claims that he was denied a promotion, denied overtime, and given a disproportionately heavy workload, the Court finds that plaintiff has stated a plausible inference of discrimination. Plaintiff does not specifically identify the national origin or religion of the engineer who plaintiff alleges received a promotion instead of him or of the other comparators he alleges received overtime and disproportionately lighter workloads. However, plaintiff does identify the engineer promoted by name and he claims that comparators were engineers who were accountable to the same supervisors. Plaintiff alleges that he and these engineers were similarly situated, but were subjected to disparate treatment because of plaintiff's national origin and religion. Drawing all reasonable inferences in plaintiff's favor, this is sufficient to state a plausible inference of discrimination. *See Bakeer v. Nippon Cargo Airlines, Co.*, No. 09-CV-3374 (RRM), 2011 WL 3625103, at *27-28 (E.D.N.Y. July 25, 2011) (finding plaintiffs' allegations that

8

their comparators were offered different terms and conditions of employment was sufficient to establish that they were similarly situated, without pleading additional facts about how they were similarly situated); *Trachtenberg v. Department of Educ. of City of New York*, 937 F. Supp. 2d 460, 471 (S.D.N.Y. 2013) (denying motion to dismiss even though the complaint was "thin on specifics—both as to how each comparator [was] similarly situated to [plaintiff] and what disparate treatment he or she was subjected to"); *Brown*, 756 F.3d at 230 (rejecting defendant's argument that plaintiff was required to specifically allege comparator employees had the same job function, experience, qualifications, and rate of pay and finding that it is reasonable to conclude when drawing all reasonable inferences in favor of plaintiff that employees were subject to the same performance evaluation and disciplinary standards, and therefore similarly situated in their employment circumstances based on allegations that the employees worked in the same group).[6]

However, the Court agrees with defendant that no inference of discrimination under Title VII arises with respect to plaintiff's discharge. Plaintiff simply alleges that he was terminated for lack of mental fitness after being on "sick leave with half pay for two years because of mental depression." (SAC at 4.) Although plaintiff alleges that the discrimination he experienced while employed at Stony Brook made him "mentally sick" (*id.*), he does not allege any facts that give rise to an inference that his termination was the result of discrimination based on plaintiff's national origin or religion. Thus, there are insufficient allegations to support a plausible claim of discrimination in connection with plaintiff's termination.[7]

Accordingly, defendant's motion to dismiss is denied with respect to plaintiff's Title VII discrimination claims for denial of a promotion, denial of overtime, the receipt of a disproportionately heavy workload, unfavorable reviews, and workplace grievances related to altercations with supervisors, but granted with respect to plaintiff's termination claim.

### C. Title VII Retaliation

"Title VII forbids an employer to retaliate against an employee for, *inter alia*, complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006); *see also* 42 U.S.C. § 2000e-3(a) (making it unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]."). Generally, in order to establish a prima facie case of retaliation, a plaintiff must demonstrate "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory v. Daly*, 243

---

[6] Defendant argues that the SAC attributes the denial of overtime solely to plaintiff's refusal to pay a "bribe," rather than any discriminatory animus. (Def. Mot. At 13.) However, plaintiff alleges that he refused to pay the bribe for religious reasons and that, after he communicated this to his supervisor, he was denied overtime. Drawing all reasonable inferences in plaintiff's favor, the Court finds this is sufficient to allege an inference of discrimination.

[7] As defendant noted, the lack of a plausible claim on the termination is further highlighted by the fact (as set forth in the SAC) that the termination was made pursuant to New York State Civil Service Law § 73.

F.3d 687, 700 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)); *see also Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012); *Patane*, 508 F.3d at 115. For a Title VII retaliation claim, plaintiff need only show that the adverse action "could . . . have dissuaded a reasonable employee in [the plaintiff's] position from complaining of unlawful discrimination." *Feliciano v. City of New York*, 2015 WL 4393163, at *9 (S.D.N.Y. July 15, 2015) (quoting *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006)). To allege causation, "the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* But-for causation "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91 (internal quotation marks and citation omitted).

Plaintiff asserts that the incidents described in the SAC are "retaliation against [his] human rights complaint." (SAC at 8.) Defendant argues that plaintiff does not state a retaliation claim with respect to this complaint. In particular, defendant notes that plaintiff filed his complaint with DHR on December 7, 2012, and the incidents occurring before December 7, 2012 cannot give rise to an inference of retaliatory animus. *See Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) (finding no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity). Defendant further contends that, with respect to the incidents between April 20, 2013 and June 20, 2013, plaintiff does not allege any facts to support a causal connection to his DHR complaint and such allegations lack temporal proximity to his DHR complaint. Temporal proximity between a protected activity and an adverse employment action can support an inference of discriminatory intent. *See Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001). However, "the temporal proximity must be 'very close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see Vega*, 801 F.3d at 90 (retaliatory purpose can be shown indirectly by the timing of a protected activity if the activity was "followed closely in time by adverse employment action" (citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001))). Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Gorman-Bakos*, 252 F.3d at 554-55, district courts in this Circuit have held that a gap of more than two months between the protected activity and the alleged adverse employment action is too long to establish an inference of causation. *See Garrett v. Garden City Hotel, Inc.*, No. 05-CV-0962 (JFB)(AKT), 2007 WL 1174891, at *21 (E.D.N.Y. 2007) (citing cases).

However, the analysis is more complex than suggested by defendant. In particular, although the DHR complaint was filed in December 2012, plaintiff was claiming "discrimination" in emails in the months leading up to the formal complaint. Defendant does not substantively address the numerous other complaints plaintiff alleges he filed with Stony Brook other than to argue (i) that the SAC is "devoid of any specific dates on which these were filed" and (ii) that the one complaint that is dated is irrelevant because it was a "workplace violence complaint" filed with Stony Brook's Labor Relations department on September 12, 2013. (Def. Mot. at 23.) Although plaintiff does not

10

give exact dates for each of the complaints in the SAC, he attaches emails indicating complaints he filed with Stony Brook. (SAC at 39.) "[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, this notion of 'opposition' includes activities such as 'making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges.'" *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)); *see also Bennett v. Hofstra Univ.*, 842 F. Supp. 2d 489, 500 (E.D.N.Y. 2012) (noting that a protected activity under Title VII does not require a formal complaint to management); *Borski v. Staten Island Rapid Transit*, No. 04-CV-3614 (SLT) (CLP), 2006 WL 3681142, at *4 (E.D.N.Y. Dec. 11, 2006) ("For Plaintiff's conduct to constitute participation in a protected activity, it is enough that he has made informal protests of discrimination, including making complaints to management." (internal quotation marks omitted)). The Court recognizes that some of plaintiff's emails do not complain about discrimination at all and others only vaguely characterize certain events as discrimination without any reference to plaintiff's protected status (for example, "[o]n 6-2-13 Dunson spent half hour washing his car on duty. Kingsly knew about it but did not issue a councilling. This is discrimination" (SAC at 27)). However, at the motion to dismiss stage (without the full context for the allegations and emails), the Court cannot conclude as a matter of law that Stony Brook could not "reasonably have understood [ ] that the plaintiff's complaint was directed at conduct prohibited by Title VII." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (alteration and citation omitted).

In short, plaintiff alleges a series of adverse actions following his alleged informal and formal complaints of discrimination. Although there were alleged adverse actions that pre-dated such complaints (and are, therefore, not a proper basis for a retaliation claim), plaintiff has a plausible claim that the alleged adverse actions occurring after his purported protected activity were retaliatory. Accordingly, defendant's motion to dismiss plaintiff's retaliation claim is denied.

### D. Hostile Work Environment

Plaintiff also makes allegations related to "workplace violences," which the Court liberally construes to assert a Title VII hostile work environment claim. (SAC at 2, 7, 8.) As set forth below, defendant's motion to dismiss this claim is denied.

Defendant argues that, as a threshold matter, plaintiff does not indicate whether such a claim has been administratively exhausted and, therefore, defendant's claim must be dismissed. However, even assuming *arguendo* that plaintiff did not exhaust this particular claim, it appears from the face of the SAC that the allegations in this claim may be "reasonably related" to his claims of discrimination. Under such circumstances, plaintiff would not be precluded from asserting this claim. *See Butts v. City of New York Dep't Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993). Defendant did not address whether plaintiff's claims could be considered "reasonably related" in its motion papers. Accordingly, there is no basis to dismiss the claim for failure to exhaust at this juncture.

Defendant also argues that the claim should be dismissed because there are no allegations that link the harassment to, *inter alia*, plaintiff's national origin. As set forth below, in light of plaintiff's *pro se* status and the detailed allegations in the complaint, the Court concludes that this claim should survive a motion to dismiss.

In order to prevail on a hostile work environment claim, a plaintiff must make two showings: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer. *Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013). Relevant factors to consider in determining whether an environment is sufficiently hostile include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). A plaintiff is not required to establish a prima facie case of hostile work environment; he need only make a short and plain statement of the claim that shows entitlement to relief and gives defendant fair notice of the claim for hostile work environment and the grounds upon which that claim rests. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002).

Plaintiff refers to a number of altercations in which supervisors yelled at him, "hammered on the table also along with yelling," and called him stupid. (SAC at 5-8.) Plaintiff also states that superiors, managers, colleagues, and assistants made life miserable for him, ridiculed him, overloaded him with work, and caused him psychological trauma. (*Id.* at 8.) If proven, this conduct could plausibly be sufficiently pervasive or severe to constitute a hostile work environment.

Moreover, although these alleged instances are not specifically linked to plaintiff's status in a protected class (such as with specific alleged comments), it is well-settled that "[f]acially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim." *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002). In viewing the totality of the circumstances, plaintiff has alleged that he and another co-worker of Indian descent were treated differently than similarly situated co-workers in terms of work assignments, overtime, and promotions. If those allegations are proven, it is certainly plausible that the other alleged harassment could also be related to plaintiff's status in a protected class, even if such status was not referenced specifically by anyone during the incident. In short, the Court concludes that, if the alleged hostile work environment is proven, it is plausible, under the totality of the circumstances, that the alleged conduct was motivated by the defendant's membership in a protected class (such as his national origin) or based upon his protected activity. Accordingly, defendant's motion to dismiss the hostile work environment claim is denied.

## IV.  CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted with respect to plaintiff's claim for Title VII discrimination as it relates to his termination, but denied with respect to the Title VII discrimination claim based upon a failure to promote, denial of overtime, negative reviews, and receipt of

a disproportionately heavy workload. Defendant's motion to dismiss is also denied as to the retaliation and hostile work environment claims under Title VII.

> SO ORDERED.
> s/ Joseph F. Bianco
>
> JOSEPH F. BIANCO
> United States District Judge

Dated: September 30, 2016
      Central Islip, New York

\* \* \*

Plaintiff is proceeding *pro se*, 5 Coolidge Court, Coram, New York 11727. Defendant is represented by Patricia M. Hingerton, Susan M. Connolly, and Theresa N. Wilson, New York State Office of the Attorney General, 300 Motor Parkway Suite 230, Hauppauge, New York 11788.