UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
STEPHEN POTHEN,

                       Plaintiff,                  **ORDER**
          -against-                            CV 13-6170 (JFB )(AYS)

STONY BROOK UNIVERSITY,

                       Defendant.
-----------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

      Stephen Pothen ("Pothen" or "Plaintiff"), proceeding pro se and in forma pauperis, filed this action against the State University of New York at Stony Brook ("Stony Brook" or "Defendant") on November 7, 2013, alleging violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") by discriminating and retaliating against him based upon his race, national origin, color, and religion. The District Court, in an order dated March 21, 2014, dismissed Plaintiff's complaint for failure to state a cause of action and gave Plaintiff an opportunity to amend. Plaintiff filed an amended complaint on June 26, 2014, and a second amended complaint on April 28, 2015. Defendant moved to dismiss the second amended complaint pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure. See Docket Entry ("DE") 47. On September 30, 2016, the District Court granted in part and denied in part Defendant's motion to dismiss. Specifically, the District Court granted the motion to dismiss with respect to Plaintiff's claim for Title VII discrimination as it relates to his termination, but denied the motion with respect to the Title VII discrimination claim based upon a failure to promote, denial of overtime, negative reviews, and receipt of a disproportionately heavy workload. Defendant's motion to dismiss was also denied as to Plaintiff's Title VII claims of retaliation and hostile work environment. See DE 51.

On November 3, 2017, this Court held a discovery conference. See Minute Order dated November 3, 2016. At the conference, the parties were given this Court's employment protocols. This Court instructed the parties to complete the protocols by December 2, 2016, and further instructed Plaintiff to contact the Eastern District Pro Se Clinic to seek assistance in completing the protocols. Id.

On December 9, 2016, this Court received a letter from Plaintiff setting forth a request that the Court decide if certain documents, which Defendant failed to produce on the basis of relevance, were in fact relevant. DE 60. On January 3, 2017, Defendant filed a status letter, which stated that "Defendant is uncertain regarding what additional discovery, if any, Plaintiff seeks." DE 61. The following day, this Court scheduled a discovery conference for January 26, 2017. See Order dated January 4, 2017. On January 9, 2017, this Court received an additional letter from Plaintiff, which set forth "grievances" Plaintiff had with Defendant's responses to his discovery requests. DE 65. On January 10, 2017, the parties requested, and were granted an adjournment of the January 26, 2017 discovery conference. DE 64. On February 2, 2017, this Court held the discovery conference. See Minute Order dated February 2, 2017.

During the February 2, 2017 discovery conference, Plaintiff raised several discovery disputes, Defendant responded, and the Court made several rulings. See Minute Order dated February 2, 2017. The Court further set the following briefing schedule for the discovery issues that were not decided during the conference:

> By February 16, 2017, Plaintiff shall produce a list of all promotions that he was denied, and the dates he applied for the promotions.
>
> By February 23, 2017, Defendant shall:

- Produce interrogatory responses with regard to Plaintiff's OSHA complaint, information already turned over to Plaintiff, and information it does not possess.

- To the extent Defendant believes requested documents and information are not relevant, it must set forth all of its objections in a letter motion, which shall set forth the basis for each objection.

- By March 2, 2017, Plaintiff shall respond to Defendant's motion.

Id.

On February 23, 2017, Defendant submitted a motion in accord with the briefing schedule set by this Court. DE 70. Plaintiff filed a response on February 27, 2017. DE 72. Although Defendant's motion identified only five remaining discovery disputes, Plaintiff's response includes seventeen numbered discovery disputes. As described in greater detail below, the issues Plaintiff identifies as items 6-11 have previously been decided by this Court, and the issues identified as 12-17 cannot be characterized as discovery disputes. As both parties have submitted their papers regarding the outstanding discovery disputes, the Court will address each discovery dispute in turn.

## DISCUSSION

I. <u>Legal Standards</u>

The scope of discovery is set forth in Rule 26 of the Federal Rules of Civil Procedure. That Rule has been amended, on several occasions, to reflect evolving judgments as to the proper scope of discovery. Over time, these amendments have been aimed at striking the proper balance between the need for evidence, and the avoidance of undue burden or expense.

In 1999, Rule 26(b)(1) stated that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any

3

other party." Fed. R. Civ. P. 26(b)(1) (1999). In 2000, in an effort to curb over-discovery that took advantage of tying the term "subject matter" to the definition of the scope of discovery, Rule 26 was amended. See Fed. R. Civ. P. 26(b)(1), Advisory Comm. Notes (2000). That amendment required a party to show "good cause" before obtaining discovery that is "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).

Most recently, as of December 1, 2015, Rule 26 has again been amended. The December 2015 amendment to Rule 26 now defines the scope of discovery to consist of information that is relevant to the parties' "claims and defenses." Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Vaigasi v. Solow Mgmt. Corp., 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Further, "[t]he party seeking the discovery must make a prima facie showing, that the discovery sought is more than merely a fishing expedition." Evans v. Calise, 1994 WL 185696, at *1 (S.D.N.Y. 1994); see also Mandell v. The Maxon Co., Inc., 2007 WL 3022552, at *1 (S.D.N.Y. 2007) ("[T]he party seeking discovery bears the burden of initially showing relevance." (citation omitted)); see also Surles v. Air France, 2001 WL 1142231, at *2 (S.D.N.Y. 2001) (refusing to permit discovery where defendant had no factual

4

basis that requests would lead to relevant evidence). It is well-established that "[m]otions to compel are left to the court's sound discretion." Mirra v. Jordan, 2016 WL 889683, at *2 (S.D.N.Y. 2016); see also Liberty Mut. Ins. Co. v. Kohler Co., 2010 WL 1930270, at *2 (E.D.N.Y. 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

Thus, the discretionary authority to allow discovery of "any matter relevant to the subject matter involved in the action" has been eliminated. Additionally, the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant "to any party's claim or defense," also "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

While proportionality factors have now been incorporated into the Rule 26(b)(1) definition, those factors were already a part of Federal discovery standards, appearing in Rule 26(b)(2)(C)(iii). Those proportionality factors have now been restored to the place of their intended importance by their incorporation into the very definition of permissible discovery. See Fed. R. Civ. P. 26(b)(1), Advisory Comm. Notes (2015) (noting that amendment "restores the proportionality factors to their original place in defining the scope of discovery," and "reinforces the Rule 26(g) obligation of the parties to consider these factors in making discovery requests, responses, or objections").

The specific proportionality factors to be assessed when considering the scope of discovery are:
- The importance of the issues at stake in the litigation;
- The amount in controversy;
- The parties' relative access to relevant information;

5

- The parties' resources;

- The importance of discovery in resolving issues; and

- Whether the burden or expense of the discovery is outweighed by the benefit

Fed. R. Civ. P. 26(b).

Notably absent from the present Rule 26 is the all too familiar, but never correct, iteration of the permissible scope discovery as including all matter that is "reasonably calculated to lead to" the discovery of admissible evidence. This language was never intended to define the scope of discovery, but was intended only to make clear that the discovery is not limited by the concept of admissibility. Unfortunately, the "reasonably calculated" language has often been employed to refer to the actual scope of discovery. Clearing up this misinterpretation, the new Rule disposes of this language, ending the incorrect, but widely quoted, misinterpretation of the scope of discovery. The present definition of the scope of discovery continues to refer to admissibility, but only by stating that "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b).

Overarching the interpretation of Rule 26, and indeed all of the Federal Rules of Civil Procedure, is the standard referred to in Rule 1 thereof. That Rule, as amended in December of 2015, requires that the Federal Rules of Civil Procedure "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding. " Fed. R. Civ. P. 1 (emphasis added). <u>See</u> Comment to 2015 Amendment to Rule 1 (noting that "the parties share the responsibility" to employ the rules consistently with the standards of Rule 1, and that "[e]ffective advocacy is consistent with -- and indeed depends upon -- cooperative and proportional use of procedure") (emphasis added).

Judicial involvement has long been recognized as critical to the effective management of discovery. Thus, as early as 1983, the Advisory Committee explained that "[t]he rule contemplates greater judicial involvement in the discovery process and thus acknowledges the reality that it cannot always operate on a self-regulating basis." Committee Notes (2015) (referring to 1983 notes). Again in 2000, the Advisory Committee noted that it had been "informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery") (Committee Notes 2000). The 2015 amendment revisits this theme, noting that the amendment "again reflects the need for continuing and close judicial involvement in the cases that do not yield readily to the ideal of effective party management," including that cases where "the parties fall short of effective, cooperative management on their own." Advisory Comm. Notes 2015.

With these standards and obligations in mind, the Court turns to the merits of the present motion to compel.

II. Disposition of the Motion

i. Documents relating to Haresh Sheth ("Sheth")

Plaintiff seeks documents regarding Sheth, Defendant's former employee, with respect to the extension of Sheth's probationary period of employment. Plaintiff claims the documentation sought will show deliberate discrimination on the basis of nationality. He reasons that Sheth's probationary period was extended due to performance concerns. Plaintiff appears to be claiming that if Sheth's file does not contain remarks related to performance concerns, the file will establish discrimination as to Plaintiff.

Defendant states that a review of Sheth's personnel file reveals that his probation was extended in November 2005 because of performance concerns, that he successfully completed

probation in June 2006, and was employed at Defendant until his retirement in 2014. Defendant objects to the disclosure of Sheth's personal files on the basis of relevance. Defendant reasons that Plaintiff has not claimed that his own probation was extended, and the reason why Sheth's probation was extended in 2005 has no bearing on the alleged adverse actions described in the Second Amended Complaint.

The Court holds that Sheth's personnel file is not relevant to the alleged adverse actions described in the second amended complaint. Indeed, Plaintiff has failed to "make a prima facie showing that the discovery sought is more than merely a fishing expedition." Evans, 1994 WL 185696, at *1. Although Plaintiff may "speculate[] that [such discovery] might reveal useful material," such speculation is not a basis for this Court to compel discovery. Surles, 2001 WL 1142231, at *2. Moreover, even if it were relevant, there are privacy concerns with the production of a non-party's personnel file, which often contains sensitive information. Allowing such disclosure would not be proportional with the needs of this case, especially when the information sought could be obtained in less intrusive ways.

Accordingly, Plaintiff's motion to compel the disclosure of documents related to Sheth is denied.

ii. <u>Documents relating to Willa Shultz ("Shultz")</u>

Plaintiff seeks documents regarding the reason why Schultz, a current employee, was demoted and transferred to the West Campus power plant. Plaintiff claims that Defendant demoted Shultz because she is Jewish. Plaintiff, therefore, claims that documentation relating to Shultz's demotion is relevant to his claim of discrimination. He reasons that because "no sane person" would agree to a demotion, such demotion was on the basis of religious beliefs. Plaintiff

8

further seems to argue that he was subject to similar discrimination because his grandparents, like Shultz, are Jewish. DE 72 ¶ 2.

Defendant states that in 2006, years before Plaintiff alleges he was discriminated against, Schultz took a voluntary demotion from her position at Stony Brook Hospital and transferred to the West Campus power plant to gain experience in order to attain the position of "PUE1," which she ultimately became. Defendant points out that in his complaint Plaintiff identifies as being Christian, and, therefore, argues that it is questionable as to whether Plaintiff is even in the same alleged protected category as Schultz. Defendant further objects to the disclosure of Schultz's records on the basis of relevance. DE 70, page 2.

The Court holds that Shultz's personnel file is not relevant to the alleged adverse actions described in the second amended complaint. The Court denies Plaintiff's request to compel Shutlz's records for the same reasons it denied the Plaintiff's request to compel Sheth's records.

   iii. <u>Documents relating to Biju John ("Biju")</u>

Plaintiff claims that Biju, a former employee of Defendant, was manhandled and the university never took any action against the offenders. Plaintiff further claims that Biju's working conditions became so bad that he had to resign. According to Plaintiff, such documentation is relevant as proof of discrimination against nationality. DE 72 ¶ 3. The Court construes Plaintiff to be arguing that the documents related to Biju's employment will demonstrate a pattern of discrimination against employees based upon their nationality, and further demonstrate that the Defendant has a policy of allowing such discrimination to occur by failing to investigate such discrimination claims.

Defendant claims such documentation is not relevant because Biju worked in a different location than Plaintiff, and resigned in September 2008 -- years before the conduct alleged by Plaintiff in this lawsuit.

Once again, Plaintiff has failed to demonstrate that the discovery sought is based upon anything other than speculation. The Court notes that evidence regarding a pattern of discrimination may be relevant to Plaintiff's claim. However, Plaintiff has provided no factual basis for his speculation that Biju was discriminated against based upon his nationality. Further, the reason for Biju's resignation will have little, if any, consequence in the determination of this action. That is because the action Biju's resignation occurred in 2008, years prior to the allegations in Plaintiff's complaint. Further, even if Plaintiff met his burden in demonstrating Biju's files were relevant, the request would still be denied. That is because Plaintiff has not demonstrated that the disclosure of a non-party's personnel records would be proportional to the needs of this case. Indeed the burden imposed on both Defendant and Biju in disclosing such records outweighs the benefit Plaintiff could gain by the production of Biju's records. This is true especially in light of the fact that other less intrusive ways to obtain the same information may exist. Accordingly, Plaintiff's motion to compel the disclosure of documents related to Biju is denied.

     iv.    <u>Documentation Regarding Plaintiff's First Interview with Defendant</u>

Plaintiff claims that although he was a "top scorer," the Defendant hired Sheth instead of Plaintiff "because [Sheth] was a few years younger" than Plaintiff. <u>See</u> Plaintiff's letter dated January 6, 2016; <u>see also</u> DE 72 ¶ 4.

Defendant argues that as Plaintiff appears to be seeking these documents to demonstrate age discrimination, such documents are not relevant because the District Court has already

dismissed this claim. See Memorandum and Order, dated September 30, 2016, p.l, fn.1 (Dkt. No. 51). Defendant further argues that any such claim would be untimely because it challenges actions which occurred seven years before he filed his first complaint with the New York State Division of Human Right ("DHR") in December 2012. DE 70 ¶ 4.

This Court agrees with Defendant. Plaintiff alleges no claims of age discrimination; therefore, documentation sought to support a claim of age discrimination is irrelevant to this action. Accordingly, the Plaintiff's motion to compel documentation related to Plaintiff's first interview with Defendant is denied.

    v.        Pay Slips of Tim Nelson ("Nelson") and Plaintiff

Plaintiff seeks pay slips of Nelson, a current employee with the title of "PUE2," and his own pay slips for the time period December 2005-2008 "to prove the overtime allotted to each of [them]." Plaintiff's letter dated December 27, 2012; DE 72 ¶ 5. Plaintiff claims that Defendant and the Union have an agreement that overtime should be distributed equally. Plaintiff therefore seeks to compel disclosure of both pay slips to demonstrate that Nelson received more overtime compensation than Plaintiff. According to Plaintiff, the difference in hours will demonstrate that Defendant discriminated based upon nationality.

Defendants argue that the pay slips are not relevant because 1) a claim of a denial of overtime for the period of 2005-2008 is untimely, and 2) the slips would simply show actual overtime worked, and not the overtime hours that employees refused despite it being offered to them. DE 70 ¶ 5.

The Court notes that Plaintiff's earliest claim of discrimination is January 17, 2010. See Amended Complaint at 3, DE 19. Moreover, any claim of a denial of overtime for the period of 2005-2008 is now untimely. Therefore, the Court finds that there is no basis to compel the

production of pay slips for the time period between 2005 and 2008. Even if the records showed that Nelson was given more overtime hours than Plaintiff, the information would not be relevant to claims of discrimination that occurred after January of 2010. Accordingly, Plaintiff's motion to compel such records is denied.

  vi.  <u>Documentation Related to Ginadi</u>

This discovery dispute was ruled upon at the February 2, 2017 status conference. The Court ruled that Defendant identified the witness, which is all that was required; therefore, there is no discovery issue with respect to Ginadi. <u>See</u> Minute Order dated February 2, 2017.

  vii.  <u>Documentation related to the OSHA complaint</u>

This discovery dispute was ruled upon at the February 2, 2017 status conference. The Court ruled that Defendants must respond to Plaintiff's request in the form of an interrogatory response. <u>See</u> Minute Order dated February 2, 2017.

  viii.  <u>Documentation related to Sick Leave</u>

This discovery dispute was ruled upon at the February 2, 2017 status conference. The Court ruled that Defendant must confirm that it turned over all sick leave requests and documentation regarding Plaintiff's request for sick leave, and that Defendant must produce its sick leave policy to plaintiff, or confirm that it was produced. <u>See</u> Minute Order dated February 2, 2017.

  ix.  <u>Documentation Regarding Denial of Promotion</u>

This discovery dispute was ruled upon at the February 2, 2017 status conference. The Court ruled that 1) within two weeks, Plaintiff shall submit to Defendant a list of all promotions he applied for, and the dates of when he applied for such promotions, and 2) Defendant must

confirm it turned over all document ion in relation to any promotion denials, and reasons for denials. See Minute Order dated February 2, 2017.

  x.  Documentation Regarding a Police Report

This discovery dispute was ruled upon at the February 2, 2017 status conference. The Court ruled that the Defendant must confirm that it looked for and turned over any SUNY police reports made by Plaintiff. See Minute Order dated February 2, 2017.

  xi.  Documentation Regarding Utility Assistant

This discovery dispute was ruled upon at the February 2, 2017 status conference. The Court ruled that Defendant must confirm whether people worked as assistants for Plaintiff. Defendant was directed to set forth how it searched for such information, and what was produced. See Minute Order dated February 2, 2017.

  xii.  Plaintiff's Requests Numbered 12-17

The paragraphs numbered 12-16 in Plaintiff's memorandum in response do not seek a ruling as to a discovery dispute. As such, the Court will not address these paragraphs. Likewise, paragraph 17 does not set forth a discovery dispute; rather, it is a request for the Court to go through photos and voice records to see what Defendant did to Plaintiff. This request is inappropriate. As such, the Court will not further address the request set forth in paragraph 17.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Prevent Disclosure, Docket No. 70, is granted. Additionally, Plaintiff's Motion to Compel, which was raised before the Court during the February 2, 2017, discovery conference, is denied.

SO ORDERED

Dated: Central Islip, New York
   March 15, 2017

/s/ Anne Y. Shields  
ANNE Y. SHIELDS  
United States Magistrate Judge